# UNITED STATES DISTRICT COURT
## DISTRICT OF SOUTH CAROLINA
## CHARLESTON DIVISION

| | | |
|---|---|---|
| TOWN OF DANVERS | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | MDL No. 2:18-mn-2873 RMG |
| vs. | ) | |
| | ) | Civil Case No.: 2:21-cv-851-RMG |
| 3M COMPANY; E. I. DUPONT DE | ) | |
| NEMOURS AND COMPANY; THE | ) | |
| CHEMOURS COMPANY; | ) | |
| THE CHEMOURS COMPANY FC, LLC; | ) | |
| DUPONT DE NEMOURS, INC.; | ) | DIRECT FILED COMPLAINT |
| CORTEVA, INC.; CHEMGUARD, INC.; | ) | AND JURY DEMAND PURSUANT |
| TYCO FIRE PRODUCTS LP | ) | TO CASE |
| (successor-in-interest to The Ansul Company); | ) | |
| KIDDE-FENWAL, INC.; | ) | MANAGEMENT ORDER NO. 3 |
| KIDDE PLC, INC.; | ) | |
| UTC FIRE & SECURITY AMERICAS | ) | |
| CORPORATION, INC.; CARRIER GLOBAL | ) | |
| CORPORATION; RAYTHEON TECHNOLOGIES | ) | |
| CORPORATION (f/k/a United Technologies | ) | |
| Corporation);  CHUBB FIRE, LTD.; NATIONAL | ) | |
| FOAM, INC.; BUCKEYE FIRE EQUIPMENT | ) | |
| COMPANY; ARKEMA, INC.; | ) | |
| ARCHROMA MANAGEMENT, LLC.; | ) | |
| ARCHROMA U.S., INC.; | ) | |
| AGC, CHEMICALS AMERICAS, INC.; | ) | |
| AGC INC. (f/k/a Asahi Glass Co., Ltd.); | ) | |
| DYNAX CORPORATION;  NATION FORD | ) | |
| CHEMICAL CORPORATION; BASF | ) | |
| CORPORATION; | ) | |
| CHEMICALS, INC.; CHEMDESIGN | ) | |
| PRODUCTS, INC.;  CLARIANT | ) | |
| CORPORATION; | ) | |
| DEEPWATER CHEMICALS, INC.; | ) | |
| and JOHN DOE DEFENDANTS 1-49 | ) | |
| | ) | |
| Defendants. | ) | |

## PLAINTIFF TOWN OF DANVERS' ORIGINAL COMPLAINT

Plaintiff Town of Danvers, Massachusetts ("Plaintiff" or "Town") alleges as follows, based on information and belief and investigation of Counsel:

## I.    SUMMARY OF THE CASE

1.    The Town of Danvers supplies drinking water to individuals and businesses in its service area.  The Town's water supply is contaminated with per- and polyfluoroalkyl substances ("PFAS") including, but not limited to, perfluorooctanoic acid ("PFOA") and/or perfluorooctane sulfonic acid ("PFOS").

2.    The Town has detected at least six different PFAS chemicals --- including the highly toxic PFOA and PFOS in its water supplies.  The Town seeks to recover by this action the substantial costs necessary to protect the public and restore its damaged drinking water supply wells and other property that have been, and continue to be, contaminated by PFAS.

3.    At various times from the 1960s through today, Defendants manufactured, marketed, and/or sold PFAS or products made with PFAS including Teflon, Scotchguard, waterproofing compounds, stainproofing compounds, paper and cloth coatings, waxes, and various other products.  One product is aqueous film-forming foam ("AFFF"), a firefighting agent used to control and extinguish Class B fuel fires.

4.    Defendants' AFFF contained per- and polyfluoroalkyl substances ("PFAS"), specifically, perfluorooctanoic acid ("PFOA") and/or perfluorooctane sulfonic acid ("PFOS"), and/or contained the precursors of PFOA and PFOS.

5.    PFOA and PFOS are manufactured compounds that are toxic and persistent in the environment, do not biodegrade, move readily through soil and groundwater, and pose a significant risk to human health and safety.

6.    Defendants manufactured, marketed and/or sold PFAS with the knowledge that these toxic compounds would be released into the environment during the intended use of products made with PFAS even when the PFAS and end products were used as directed and intended by the manufacturer.

7.    At all relevant times, beginning decades ago and, upon information and belief, continuing to this date, PFAS-containing products were sold, supplied, used, and disposed in the vicinity of the Town's wells and water supplies.  During these activities, PFAS-containing products were used as directed and intended by the manufacturers, which allowed PFAS, including but not limited to PFOA and PFOS, to enter the environment.  When used and disposed as intended, these compounds migrated through the soil and into the groundwater, thereby contaminating Plaintiff's water supply.

8.    Defendants manufactured, marketed and/or sold AFFF with the knowledge that these toxic compounds would be released into the environment during fire protection, training, and response activities even when the AFFF was used as directed and intended by the manufacturer.

9.    At all relevant times, beginning decades ago and, upon information and belief, continuing to this date, AFFF containing PFOS and/or PFOA has been used and stored at fire training facilities, airports, and military bases for fire protection, training, and response activities. During these activities, AFFF was used as directed and intended by the manufacturers, which allowed PFOA and PFOS to enter the environment.  When sprayed onto outdoor surfaces as intended, these compounds migrated through the soil and into the groundwater, thereby contaminating Plaintiff's water supply.

10.     As a result of the use of PFAS-containing products, including AFFF and others, for their intended purposes, the Town has detected several discrete PFAS chemicals, including PFOS and PFOA, in its water supplies and wells at substantial levels.

11.     Plaintiff files this lawsuit to recover compensatory and all other damages, including but not limited to the costs of designing, constructing, installing, operating and maintaining the treatment facilities and equipment required to comply with state and federal safe drinking water laws and to remove PFAS from the drinking water supplied to the public and/or for the costs of securing alternative sources of water as a result of the PFAS contamination, and to ensure that the responsible parties bear such expense, rather than the Town and its ratepayers.

## II.     PARTIES

12.     Plaintiff is a duly constituted municipality in Essex County, Massachusetts, with its principal office located at the Municipal Building, Sylvan and Holten Streets, Danvers MA 01923.

13.     The Town's Water Division operates the public drinking water system.  The Water Division treats approximately 1.176 billion gallons of water per year, operates a state certified laboratory for water bacterial analysis, provides compliance for the Safe Drinking Water Act and maintains 181.05 miles of distribution main. The Water Division supplies drinking water to the residents of Danvers.

14.     The Town has a property interest in the water it appropriates, treats, stores, and distributes to the public as well as in its wells, piping, distribution system, and facilities (collectively, the "Town Property" or "Plaintiff's Property").

15.    The following Defendants designed, manufactured, formulated, marketed, promoted, distributed, sold (directly or indirectly), applied, discharged, disposed of and/or released the PFAS and/or products containing the PFAS that contaminates Danvers Water Wells and water supply:

a.    Defendant 3M Company (f/k/a Minnesota Mining and Manufacturing Company) ("3M") is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business located at 3M Center, St. Paul, Minnesota 55144.  At all times relevant, 3M manufactured, marketed, promoted, distributed, and/or sold AFFF containing PFOA and/or PFOS used to fight fires at numerous military bases, airports, and other locations throughout the country.

b.    3M is the only company that manufactured and/or sold AFFF containing PFOS.

c.    Defendant E. I. DuPont De Nemours and Company ("DuPont") is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business located at 974 Centre Road, Wilmington, Delaware 19805.

d.    Defendant The Chemours Company ("Chemours") is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business located at 1007 Market Street, Wilmington, Delaware 19899.  Chemours does business throughout the United States.

e.    In 2015, DuPont spun off its "Performance Chemicals" business to Chemours, along with certain environmental liabilities. Upon information and belief, at the time of the transfer of its Performance Chemicals business to Chemours, DuPont had been sued, threatened with suit and/or had knowledge of the likelihood of litigation to be filed

regarding DuPont's liability for damages and injuries arising from the manufacture and sale of PFAS compounds and products that contain PFAS compounds.

f.  Defendant The Chemours Company FC LLC ("Chemours FC"), successor in interest to DuPont Chemical Solutions Enterprise, is a Delaware Corporation and conducts business throughout the United States.  Its principal place of business is 1007 Market Street Wilmington, Delaware, 19899.

g.  Defendant DuPont de Nemours, Inc. is a Delaware corporation with its principal place of business located at 974 Centre Road, Building 730, Wilmington, Delaware 19805. Upon information and belief, DowDuPont, Inc. was formed in 2017 as a result of the merger of Dow Chemical and DuPont. DowDuPont, Inc. was subsequently divided into three publicly traded companies and on June 1, 2019, DowDuPont, Inc. changed its registered name to DuPont de Nemours, Inc. ("New DuPont"). Upon information and belief, New DuPont does and/or has done business throughout the United States

h.  Defendant Corteva, Inc. is a Delaware corporation with its principal place of business located at 974 Centre Road, Wilmington, Delaware 19805. Upon information and belief, Corteva, Inc. is one of the aforementioned spin-off companies from DowDuPont, Inc., and is believed to have assumed some of the PFAS liabilities of the former DuPont.

i.  Defendant Chemguard, Inc. ("Chemguard") is a corporation organized and existing under the laws of the State of Wisconsin, with its principal place of business located at One Stanton Street, Marinette, Wisconsin 54143.  Chemguard does business throughout the United States.  This Defendant manufactured and sold AFFF that contained PFOA.

6

j.   Defendant Tyco Fire Products LP ("Tyco") is a limited partnership organized and existing under the laws of the State of Delaware, with its principal place of business located at 1400 Pennbrook Parkway, Lansdale, Pennsylvania 19446.  Tyco acquired Chemguard in 2011.

k.   Tyco is the successor-in-interest to The Ansul Company ("Ansul") and manufactured, marketed, promoted, distributed, and/or sold the Ansul brand products, including AFFF, that contained fluorocarbon surfactants containing PFAS. Ansul and/or Tyco as the successor-in-interest to Ansul will be referred to collectively as "Tyco/Ansul" and upon information and belief, and Tyco/Ansul does and/or has done business throughout the United States.

l.   Defendant Kidde-Fenwal, Inc. ("Kidde-Fenwal") is a corporation organized under the laws of the State of Delaware, with its principal place of business located at One Financial Plaza, Hartford, Connecticut 06101.  Upon information and belief, Kidde was part of UTC Fire & Security Americas Corporation, Inc. Upon information and belief, Kidde-Fenwal, Inc. is the successor-in-interest to Kidde Fire Fighting, Inc. (collectively, "Kidde/Kidde Fire"). Upon information and belief, Kidde/Kidde Fire does and/or has done business throughout the United States.

m.   Defendant Kidde PLC, Inc. ("Kidde PLC") is a foreign corporation organized and existing under the laws of the State of Delaware, with its principal place of business located at One Carrier Place, Farmington, Connecticut 06034.

n.   Defendant Kidde Fire Fighting, Inc. ("Kidde Fire") is a Pennsylvania corporation with principal offices at 180 Sheree Blvd., Suite 3900, Exton, Pennsylvania 19341  Upon

information and belief, Kidde Fire was formerly known as National Foam, Inc., National Foam System, Inc., and/or Chubb National Foam, Inc. Defendant UTC Fire & Security Americas Corporation, Inc. (f/k/a GE Interlogix, Inc.) ("UTC") is a North Carolina corporation with its principal place of business at 3211 Progress Drive, Lincolnton, North Carolina 28092. Upon information and belief, Kidde-Fenwal, Inc. is part of the UTC Climate Control & Security unit of United Technologies Corporation.

o. Defendant UTC Fire & Security Americas Corporation, Inc. ("UTC") is a Delaware corporation with its principal place of business at 13995 Pasteur Blvd., Palm Beach Gardens, Florida 33418. Upon information and belief, UTC was a division of United Technologies Corporation.

p. Defendant Carrier Global Corporation ("Carrier") is a Delaware corporation with its principal place of business located at 13995 Pasteur Boulevard, Palm Beach Gardens, Florida 33418. Upon information and belief, UTC is now a division of Carrier.

q. Defendant Raytheon Technologies Corporation (f/k/a United Technologies Corporation) ("Raytheon Tech f/k/a United Tech") is a Delaware corporation with its principal place of business at 10 Farm Springs Road, Farmington, Connecticut 06032. Upon information and belief, Raytheon Tech f/k/a United Tech does and/or has done business throughout the United States.

r. Defendant National Foam, Inc. ("National Foam") is a corporation organized under the laws of the State of Delaware, with its principal place of business located at 141 Junny Road, Angier, North Carolina 27501. National Foam manufactures the Angus brand of products and is the successor-in-interest to Angus Fire Armour Corporation

(collectively, "National Foam/Angus Fire"). National Foam/Angus Fire does and/or has done business throughout the United States. This Defendant manufactured and sold AFFF that contained PFOA.

s.   Defendant Chubb Fire, Ltd. ("Chubb") is a foreign private limited company, with offices at Littleton Road, Ashford, Middlesex, United Kingdom TW15 1TZ. Upon information and belief, Chubb is registered in the United Kingdom with a registered number of 134210. Upon information and belief, Chubb is or has been composed of different subsidiaries and/or divisions, including but not limited to, Chubb Fire & Security Ltd., Chubb Security, PLC, Red Hawk Fire & Security, LLC, and/or Chubb National Foam, Inc.

t.   Defendant Buckeye Fire Equipment Company ("Buckeye") is a foreign corporation organized and existing under the laws of the State of Ohio, with its principal place of business at 110 Kings Road, Mountain, North Carolina 28086. Upon information and belief, this Defendant manufactured and sold AFFF that contained PFOA throughout the United States.

u.   Defendant Arkema, Inc. is a corporation organized and existing under the laws of the State of Pennsylvania, with its principal place of business at 900 1st Avenue, King of Prussia, Pennsylvania 19406.

v.   Defendant Archroma Management, LLC ("Archroma"), is a corporation existing under the laws of the country of Switzerland and does business throughout the United States. Archroma has its principal place of business at Neuhofstrasse 11, 4153 Reinach Basel-Land Switzerland.

w.  Defendant Archroma U.S., Inc. is a Delaware corporation with its principal place of business located at 5435 77 Center Dr., #10, Charlotte, North Carolina 28217. Upon information and belief, Archroma U.S., Inc. is a subsidiary of Archroma Management, LLC, and supplied Fluorosurfactant Products for use in AFFF. Archroma U.S., Inc. does and/or has done business throughout the United States

x.  Defendant AGC, Inc. f/k/a Asahi Glass Co., Ltd. ("AGC"), is a corporation organized under the laws of Japan and does business throughout the United States. AGC has its principal place of business at 1-5-1, Marunouchi, Chiyoda-ku, Tokyo 100-8405 Japan.

y.  Defendant AGC Chemicals Americas, Inc. ("AGC America") is a corporation organized and existing under the laws of the State of Delaware with its principal place of business at 55 E. Uwchland Avenue, Suite 201, Exton Pennsylvania 19341.  Upon information and belief, AGC America is a subsidiary of AGC, Inc., a Japanese corporation formerly known as Asahi Glass Company, Ltd.

z.  Defendant Dynax Corporation ("Dynax") is a Delaware Corporation which conducts business throughout the United States. Its principal place of business is at 103 Fairview Park Drive, Elmsford, New York 10523. Upon information and belief, this Defendant manufactured Fluorosurfactant Products for use in AFFF.

aa. Defendant Nation Ford Chemical Corporation ("Nation Ford") is a corporation organized under the laws of the State of South Carolina and conducts business throughout the United States. Its principal place of business is located at 2300 Banks St., Fort Mill, South Carolina 29715.

bb. Defendant BASF Corporation ("BASF") is a Delaware corporation and conducts business throughout the United States. Its North American headquarters is at 100 Park

Avenue, Florham Park, New Jersey 07932. Upon information and belief, BASF acquired Ciba-Geigy Corporation and/or Ciba Specialty Chemicals. BASF is registered to do business in California. Upon information and belief, Ciba-Geigy Corporation and/or Ciba Specialty Chemicals does and/or has done business throughout the United States.

cc. Defendant Chemicals Inc. ("Chemicals Inc.") is a Texas corporation and conducts business throughout the United States. Its principal place of business is located at 12321 Hatcherville Road, Baytown, Texas 77521.

dd. Defendant ChemDesign Products Inc. ("Chemdesign") is a Wisconsin corporation and conducts business throughout the United States. Its principal place of business is located at 2 Stanton Street, Marinette, Wisconsin 54143. Upon information and belief, this Defendant manufactured Fluorosurfactant Products for use in AFFF.

ee. Defendant Clariant Corporation ("Clariant") is a New York corporation and conducts business throughout the United States. Its principal place of business is located at 4000 Monroe Road, Charlotte, North Carolina 28205.

ff. Defendant Deepwater Chemicals, Inc. ("Deepwater") is a Delaware corporation with a principal place of business at 196122 County Road 40, Woodward, Oklahoma 73801. Upon information and belief, this Defendant manufactured Fluorosurfactant Products for use in AFFF.

gg. Upon information and belief, Defendants John Doe 1-49 were manufacturers and/or sellers of PFAS and/or PFAS-containing products including AFFF. Although the identities of the John Doe Defendants are currently unknown, it is expected that their names will be ascertained during discovery, at which time Plaintiff will move for leave

11

of this Court to add those individuals' actual names to the Complaint as Defendants. Upon information and belief, Defendant John Does 1-49 were manufacturers or sellers of AFFF products. Although the identities of the John Doe Defendants are currently unknown, it is expected that their names will be ascertained during discovery, at which time the Town will move for leave of this Court to add those individuals' actual names to the Complaint as Defendants.

16.    Any and all references to a Defendant or Defendants in this Complaint include any predecessors, successors, parents, subsidiaries, affiliates and divisions of the named Defendants.

17.    When the term "Defendants" is used alone, it refers to all Defendants named in this Complaint jointly and severally. When reference is made to any act or omission of the Defendants, it shall be deemed to mean that the officers, directors, agents, employees, or representatives of the Defendants committed or authorized such act or omission, or failed to adequately supervise or properly control or direct their employees while engaged in the management, direction, operation or control of the affairs of Defendants, and did so while acting within the scope of their employment or agency.

### III.    JURISDICTION AND VENUE

18.    This Court has jurisdiction pursuant to 28 U.S.C. §1332 because complete diversity exists between Plaintiff and Defendants, and the amount in damages exceeds the minimal jurisdictional limits of this Court.

19.    Venue is appropriate in this judicial district pursuant to this Court's Case Management Order No. 3 ("CMO 3"). Plaintiff states that but for CMO 3 permitting direct filing in

the United States District Court for the District of South Carolina, Plaintiff would have filed this

Complaint in the United States District Court for the District of Massachusetts. Further, in

accordance with CMO 3, Plaintiff hereby designates the United States District Court for the District

of Massachusetts as the "Home Venue" as this case may have originally been filed there.

20.    Venue is proper in the United States District Court for the District of Massachusetts

pursuant to 28 U.S.C. § 1391 because it is the judicial district in which Plaintiff is a resident and

citizen, a substantial part of the property that is the subject of this action is situated in this judicial

district, and a substantial part of the events or omissions giving rise to this action occurred in this

judicial district.

## IV.    FACTUAL ALLEGATIONS

**THE CONTAMINANTS: PFOA & PFOS**

21.     PFOA and PFOS are stable manmade chemicals in a family known as per- and

polyfluoroalkyl substances ("PFAS").  A PFAS is a chain of carbon atoms surrounded by

fluorine atoms.  PFOA and PFOS are PFAS with eight or more carbon atoms.  For this reason,

they are sometimes referred to as "C8."

22.    PFAS do not occur in nature.  Rather, they are stable, man-made chemicals.  They

are highly water soluble, persistent in the environment and resistant to biologic, environmental,

or photochemical degradation.  Because these compounds are water soluble and do not readily

adsorb to sediments or soil, they tend to stay in the water column and can be transported long

distances.

23.    PFOA and PFOS are readily absorbed in animal and human tissues after oral

exposure and accumulate in the serum, kidney, and liver.  They have been found globally in

water, soil, and air as well as in human food supplies, breast milk, umbilical cord blood, and

human blood serum.[1]

24.    PFOA and PFOS are persistent in the human body.  A short-term exposure can

result in a body burden that persists for years and can increase with additional exposures.[2]

25.    Since they were first produced, information has emerged showing negative health

effects caused by exposure to PFOA and PFOS.

26.    According to the EPA, "…studies indicate that exposure of PFOA and PFOS over

certain levels may result in…developmental effects to fetuses during pregnancy or to breastfed

infants (e.g., low birth weight, accelerated puberty, skeletal variations), cancer (e.g., testicular,

kidney), liver effects (e.g., tissue damage), immune effects (e.g., antibody production and

immunity), thyroid effects and other effects (e.g., cholesterol changes)."[3]

27.    EPA has also warned that "there is suggestive evidence of carcinogenic potential

for PFOS."[4]

28.    EPA has noted that "drinking water can be an additional source [of PFOA/PFOS

in the body] in the small percentage of communities where these chemicals have contaminated

water supplies." In communities with contaminated water supplies, "such contamination is

---

[1] *See* Agency for Toxic Substances and Disease Registry, *Per- and Polyfluoroalkyl Substances and Your Health*, available at https://www.atsdr.cdc.gov/pfc/health_effects_pfcs.html.
[2] *See* EPA, Drinking Water Health Advisory for Perfluorooctanoic Acid (PFOA), EPA Document Number: 822-R-16-005 (May 2016) at 55;  Drinking Water Health Advisory for Perfluorooctane Sulfonate (PFOS), EPA Document Number: 822-R-16-004 ( May 2016) at 55,  both  available at https://www.epa.gov/ground-water-and-drinking-water/supporting-documents-drinking-water-health-advisories-pfoa-and-pfos.
[3] *See* "Fact Sheet PFOA & PFOS Drinking Water Health Advisories," EPA Document Number: 800-F-16-003, available at https://www.epa.gov/ground-water-and-drinking-water/supporting-documents-drinking-water-health-advisories-pfoa-and-pfos.
[4] *See* "Health Effects Support Document for Perfluorooctane Sulfonate (PFOS)" U.S. Environmental Protection Agency Office of Water Health and Ecological Criteria Division, EPA Document Number: 822-R-16-002, available at https://www.epa.gov/ground-water-and-drinking-water/supporting-documents-drinking-water-health-advisories-pfoa-and-pfos.

typically localized and associated with a specific facility, for example…an airfield at which [PFOA/PFOS] were used for firefighting."[5]

29.    The EPA has issued Health Advisory Values for PFOA and PFOS found in drinking water of 70 parts per trillion ("ppt"). When both PFOA and PFOS are found in drinking water, the combined concentrations should not exceed 70 ppt.

30.    PFOS and/or PFOA are primary components of PFAS and AFFF.

**THE PRODUCT: PFAS-CONTAINING PRODUCTS**

31.    PFAS are used to make a variety of consumer and industrial goods sold, supplied, used, and disposed of in Massachusetts.

32.    PFAS are used, for example, in nonstick cookware, waterproofing waxes, stain-preventing coatings, and aqueous film-forming foams ("AFFF") used for firefighting.

33.    When used as intended, PFAS escape these products and enter into the environment.

34.    Once PFAS, including PFOA and PFOS, are free in the environment they do not hydrolyze, photolyze, or biodegrade under typical environmental conditions, and they are extremely persistent in the environment.  As a result of their persistence, they are widely distributed throughout soil, air, and groundwater.

35.    The use of PFAS-containing products as directed and intended by the manufacturers allowed PFOA and PFOS to enter into and onto Plaintiff's Property where these compounds migrated through the subsurface and into the groundwater, thereby contaminating the

---

[5] *See* "Fact Sheet PFOA & PFOS Drinking Water Health Advisories," EPA Document Number: 800-F-16-003, available at https://www.epa.gov/ground-water-and-drinking-water/supporting-documents-drinking-water-health-advisories-pfoa-and-pfos.

surface, soil, sediment and groundwater, as well as causing other extensive and ongoing damage to Plaintiff's Property.

36.    Due to the chemicals' persistent nature, among other things, these chemicals have, and continue to, cause injury and damage to Plaintiff's Property.

**THE PRODUCT: AQUEOUS FILM-FORMING FOAM**

37.    Aqueous Film-Forming Foam ("AFFF") is a water-based foam that was first developed in the 1960s to extinguish flammable liquid fuel fires at airports, among other places.

38.    The AFFF products made by Defendants contained either or both PFOA and PFOS.

39.    The AFFF produced, marketed  and/or sold by 3M was the only AFFF produced from fluorochemicals manufactured through electrochemical fluorination ("ECF"), a process that generates PFOS. All other Defendants used telomerization to produce AFFF; fluorochemicals made through telomerization degrade into PFOA, but not PFOS.

40.    AFFF can be made without PFOA and PFOS. Fluorine-free foams do not release dangerous PFOA and/or PFOS into the environment.

41.    AFFF is used to extinguish fires that are difficult to fight, particularly fires that involve petroleum or other flammable liquids. AFFF works by coating the ignited fuel source, preventing its contact with oxygen and suppressing combustion. AFFF is typically sprayed directly onto a fire.

42.    When used as the Defendants intended and directed, AFFF releases PFOA and/or PFOS into the environment.

43.    Once PFOA and PFOS are free in the environment, these chemicals do not hydrolyze, photolyze, or biodegrade under typical environmental conditions and are extremely

persistent in the environment.  As a result of their persistence, they are widely distributed throughout soil, air, and groundwater.

**DEFENDANTS' KNOWLEDGE OF PFOA AND PFOS HAZARDS**

44.    On information and belief, by the early 1980s, Defendants knew, or reasonably should have known, among other things, that: (a) PFOA and PFOS are toxic; and (b) when sprayed in the open environment per the instructions given by the manufacturer, PFOA and PFOS readily migrate through the subsurface, mix easily with groundwater, resist natural degradation, render drinking water unsafe and/or non-potable, and can be removed from public drinking water supplies only at substantial expense.

45.    Defendants also knew or reasonably should have known that PFOA and PFOS could be absorbed into the lungs and gastrointestinal tract, potentially causing severe damage to the liver, kidneys, and central nervous system, in addition to other toxic effects, and that PFOA and PFOS are known carcinogens that cause genetic damage.

46.    In 1980, 3M published data in peer reviewed literature showing that humans retain PFOS in their bodies for years. Based on that data, 3M estimated that it could take a person up to 1.5 years to clear just half of the accumulated PFOS from their body after all exposures had ceased.[6]

47.    By the early 1980s, the industry suspected a correlation between PFOS exposure and human health effects.  Specifically, manufacturers observed bioaccumulation of PFOS in workers' bodies and birth defects in children of workers.

---

[6] *See* Letter from 3M to Office of Pollution Prevention and Toxics, EPA titled "TSCA 8e Supplemental Submission, Docket Nos. 8EHQ-0373/0374 New Data on Half Life of Perfluorochemicals in Serum," available at http://www.ewg.org/research/dupont-hid-teflon-pollution-decades.

48.    In 1981, DuPont tested for and found PFOA in the blood of female plant workers in Parkersburg, West Virginia. DuPont observed and documented pregnancy outcomes in exposed workers, finding two of seven children born to female plant workers between 1979 and 1981 had birth defects—one an "unconfirmed" eye and tear duct defect, and one a nostril and eye defect.[7]

49.    Beginning in 1983, 3M documented a trend of increasing levels of PFOS in the bodies of 3M workers. In an internal memo, 3M's medical officer warned "we must view this present trend with serious concern. It is certainly possible that … exposure opportunities are providing a potential uptake of fluorochemicals that exceeds excretion capabilities of the body."[8]

50.    Based on information and belief, in 2000, under pressure by the Environmental Protection Agency ("EPA"), 3M announced that it was phasing out PFOS and U.S. production of PFOS; 3M's PFOS-based AFFF production did not fully phase out until 2002.

51.    From 1951, Dupont, and on information and belief, Chemours, designed, manufactured, marketed, and sold products containing PFOA, including Teflon nonstick cookware, and at more recently PFOAS feedstocks, such as Forafac 1157 N, for the use in the manufacture of AFFF products.

52.    Based on information and belief, in 2001 or earlier, Dupont manufactured, produced, marketed, and sold PFOA and/or PFAS feedstocks to some or all of the AFFF product manufacturers, which were included in their AFFF products that were discharged into the environment and contaminated drinking water supplies in the Town.

---

[7] *See* Memorandum "C-8 Blood Sampling Results, Births and Pregnancies," available at http://www.ewg.org/research/dupont-hid-teflon-pollution-decades.
[8] *See* Memorandum "Organic Fluorine Levels," August 31, 1984, available at http://www.ewg.org/research/dupont-hid-teflon-pollution-decades.

53.    DuPont had been studying the potential toxicity of PFOA since at least the 1960s and knew that it was contaminating drinking water drawn from the Ohio River and did not disclose to the public or to government regulators what they knew about the substance's potential effects on humans, animals, or the environment.[9]

54.    By December 2005, the E.P.A. uncovered evidence that DuPont concealed the environmental and health effects of PFOA, and the E.P.A. announced the "Largest Environmental Administrative Penalty in Agency History."[10]   The E.P.A. fined DuPont for violating the Toxic Substances Control Act "Section 8(e)—the requirement that companies report to the E.P.A. substantial risk information about chemicals they manufacture, process or distribute in commerce."[11]

55.    By July 2011, DuPont could no longer credibly dispute the human toxicity of PFOA, which it continued to manufacture. The "C8 Science Panel" created as part of the settlement of a class action over DuPont's releases from the Washington Works plant had reviewed the available scientific evidence and notified DuPont of a "probable link"[12] between PFOA exposure and the serious (and potentially fatal) conditions of pregnancy-induced hypertension and preeclampsia.[13]   By October 2012, the C8 Science Panel had notified DuPont of a probable link

---

[9] *See, e.g.*, Fred Biddle, "DuPont confronted over chemical's safety," *Wilmington News Journal* (Apr. 13, 2003). The *Wilmington News Journal* is published in Wilmington, Ohio.
[10] $16.5 million.
[11] U.S.Envtl. Prot. Agency, Reference News Release, "EPA Settles PFOA Case Against DuPont for Largest Environmental Administrative Penalty in Agency History" (Dec. 14, 2005), https://www.epa.gov/enforcement/reference-news-release-epa-settles-pfoa-case-against-dupont-largest-environmental (last viewed on January 30, 2018).
[12] Under the settlement, "probable link," means that given the available scientific evidence, it is more likely than not that among class members a connection exists between PFOA/C8 exposure and a particular human disease.
[13] *See* The C8 Science Panel, *Status Report: PFOA (C8) exposure and pregnancy outcome among participants in the C8 Health Project* (July 15, 2011), http://www.c8sciencepanel.org/pdfs/Status_Report_C8_and_pregnancy_outcome_15July2011.pdf (last viewed on January 28, 2018).

between PFOA and five other conditions—high cholesterol, kidney cancer, thyroid disease, testicular cancer, and ulcerative colitis.

56.    In July 2015, E.I. du Pont de *Nemours* spun off its *chemicals* division, creating *Chemours*, a new publicly-traded company named The Chemours Company, once wholly owned by DuPont. By mid- 2015, DuPont had dumped its perfluorinated chemical liabilities into the lap of the new Chemours Company.

57.    Defendants also knew or should have known that: (a) users of AFFF would likely include fire and rescue training organizations and their personnel; (b) fire and rescue personnel were foreseeable users of AFFF containing or degrading into PFOA and/or PFOS in both training and real-life fire emergency scenarios; (c) PFOA and PFOS are dangerous to the environment and human health if allowed to runoff or drain into groundwater; (d) fire and rescue personnel in Danvers Massachusetts foreseeably lacked knowledge of these dangers; and, (e) fire and rescue personnel would require warnings of these dangers and/or affirmative instructions in the use of AFFF.

58.    Notwithstanding this knowledge, Defendants negligently and carelessly: (1) designed, manufactured, marketed, purchased, supplied, and/or sold PFOA/PFOS, (2) issued instructions on how AFFF should be used and disposed of (namely, by washing the foam into the soil), thus improperly permitting PFOA and/or PFOS to contaminate the groundwater in and around the Town's wells; (3) failed to recall and/or warn the users of AFFF, negligently designed products containing or degrading into PFOA and/or PFOS, of the dangers of groundwater contamination as a result of standard use and disposal of these products; and, (4) further failed and refused to issue the appropriate warnings and/or recalls to the users of AFFF containing

PFOA and/or PFOS, notwithstanding the fact that Defendants knew the identity of the purchasers of the PFOA/PFOS.

59.    As a direct result of Defendants' acts alleged in this Complaint, the Town's wells have been contaminated and will continue to be contaminated with PFAS including PFOA and PFOS, creating a public health hazard, unless such contamination is remediated. As a direct and proximate result, the Town must assess, evaluate, investigate, monitor, remove, clean up, correct, and remediate PFOA and PFOS contamination in its wells at significant expenses, loss and damage.

60.    Defendants had a duty and breached their duty to evaluate and test such products adequately and thoroughly to determine their environmental fate and transport characteristics and potential human health and environmental impacts before they sold such products. They also had a duty and breached their duty to minimize the environmental harm caused by PFOA and PFOS.

**THE IMPACT OF PFOA AND PFOS ON THE TOWN'S WELLS**

61.    PFAS, including but not limited to PFOA and PFOS, have been detected in varying amounts at varying times in Danvers Wells.

62.    Plaintiff contends that any detectible level of PFOA and/or PFOS in its soil, surface water, groundwater, well water, or elsewhere on its property requires investigation, remediation and monitoring.

63.    The detection and/or presence of PFAS, including PFOA and PFOS, and the threat of further detection and/or presence of PFOA and PFOS, in the Danvers Wells in varying amounts and at varying times has resulted, and will continue to result, in significant injuries and damage to Plaintiff.

21

64.     Upon information and belief, the invasion of Plaintiff's Property with PFOA and PFOS is recurring—new contamination flows regularly and constantly through the groundwater and into Plaintiff's Property each day, resulting in new harm to the property and Plaintiff on each occasion.

65.     The injuries to Plaintiff caused by Defendants' conduct constitute an unreasonable interference with, and damage to, the Plaintiff's Property. Plaintiff's interests in protecting its property constitute a reason for seeking damages sufficient to restore such property to its pre-contamination condition.

## FIRST CAUSE OF ACTION

BREACH OF IMPLIED WARRANTY OF
MERCHANTABILITY DEFECTIVE DESIGN

66.     The Town realleges and reaffirms each and every allegation set forth in all preceding paragraphs as if fully restated in this cause of action.

67.     Defendants were in the business of producing, making, fabricating, constructing, designing, marketing, and selling PFAS-containing products and/or AFFF containing PFOA and/or PFOS.

68.     All of Defendants' PFAS-containing products and/or AFFF products were manufactured for placement into trade or commerce.

69.     Defendants marketed and sold AFFF for use in controlling and extinguishing aviation, marine, fuel and other shallow spill fires.

70.     As manufacturers, Defendants owed a duty to all persons whom its products might foreseeably harm, including the Town, not to market any product which is unreasonably dangerous in design for its reasonably anticipated use.

71.    By manufacturing and selling PFAS-containing products and/or AFFF, Defendants warranted that such products were merchantable, safe, and fit for ordinary purposes.

72.    Defendants breached that warranty as PFAS-containing products and/or AFFF is unreasonably dangerous for their reasonably anticipated uses for the following reasons:

a.    PFAS including PFOA and PFOS cause extensive groundwater contamination, even when used in their foreseeable and intended manner;

b.    Even at extremely low levels, PFAS including PFOA and/or PFOS render drinking water unfit for consumption;

c.    PFAS including PFOA and/or PFOS pose significant threats to public health; and,

d.    PFAS including PFOA and/or PFOS create real and potential environmental damage.

73.    Defendants knew of these risks associated with PFAS including PFOA and PFOS, and failed to use reasonable care in the design of their PFAS-containing products and/or AFFF products.

74.    PFAS-containing products and/or AFFF containing PFOA and/or PFOS pose greater danger to the environment than would be expected by ordinary persons such as the Town and the general public.

75.    At all times, Defendants were capable of making PFAS-containing products and/or AFFF that did not contain PFOA/PFOS.  Reasonable alternative designs existed which were capable of preventing the Town's damage.

76.    The risks posed by PFAS-containing products and/or PFOA/PFOS-containing AFFF far outweigh the products' utility.

77.     The likelihood that PFAS-containing products and/or AFFF would be spilled, discharged, disposed of, or released onto land and contaminate the Town's property and the gravity of that damage far outweighed any burden on Defendants to adopt an alternative design, and outweighed the adverse effect, if any, of such alternative design on the utility of the product.

78.     Had the Town known of these dangers, it would not have purchased PFAS-containing products and/or AFFF.

79.     The Town relied on Defendants' implied warranty that their PFAS-containing products and/or AFFF products were safe for use.

80.     As a direct and proximate result of Defendants' unreasonably dangerous design, manufacture, and sale of PFAS-containing products and/or AFFF, the Town has suffered, and continues to suffer, property damage requiring investigation, remediation, and monitoring costs to be determined at trial.

81.     Defendants knew that it was substantially certain that its acts and omissions described above would threaten public health and cause extensive contamination of property, including groundwater collected for drinking.  Defendants committed each of the above described acts and omissions knowingly, willfully, and/or with fraud, oppression, or malice, and with conscious and/or reckless disregard for the health and safety of others, and for the Town's property rights.

## SECOND CAUSE OF ACTION

BREACH OF IMPLIED WARRANTY OF
MERCHANTABILITY FAILURE TO WARN

82.     The Town realleges and reaffirms each and every allegation set forth in all preceding paragraphs as if fully restated in this count.

83.     As manufacturers of PFAS-containing products and/or AFFF, Defendants had a duty to provide adequate warnings of the risks of these products to all persons whom its product might foreseeably harm, including the Town, the public, and public officials.

84.     PFAS-containing products and/or AFFF are unreasonably dangerous for their reasonably anticipated uses for the following reasons:

   a.   PFOA and PFOS cause extensive groundwater contamination, even when used in their foreseeable and intended manner;

   b.   even at extremely low levels, PFOA and/or PFOS render drinking water unfit for consumption;

   c.   PFOA and/or PFOS pose significant threats to public health; and,

   d.   PFOA and/or PFOS create real and potential environmental damage.

85.     Defendants knew of the health and property damage risks associated with PFAS-containing products and/or AFFF, and failed to provide a warning that would lead an ordinary reasonable user or handler of a product to contemplate the dangers associated with PFAS-containing products and/or an instruction that would have allowed the Town to avoid the damage to its property.

86.     Despite Defendants' knowledge of the environmental and human health hazards associated with the use and/or disposal of PFAS-containing products and/or AFFF in the vicinity of subterranean drinking water supplies, including contamination of public drinking water supplies with PFOA and/or PFOS, Defendants failed to issue any warnings, instructions, recalls, or advice regarding PFAS-containing products and/or AFFF to the Town, governmental agencies or the public.

87.     The Town would have heeded legally adequate warnings and would not have purchased products containing PFOA and PFOS, or would have taken steps to ensure that PFAS-containing products and/or AFFF were treated differently to prevent potential exposure and contamination of the environment.

88.     As a direct and proximate result of Defendants' failure to warn, the Town has suffered, and continues to suffer, property damage requiring investigation, remediation, and monitoring costs to be determined at trial.

89.     Defendants knew that it was substantially certain that its acts and omissions described above would threaten public health and cause extensive contamination of subterranean drinking water supplies.  Defendants committed each of the above described acts and omissions knowingly, willfully, and/or with fraud, oppression, or malice, and with conscious and/or reckless disregard for the health and safety of others, and for the Town's property rights.

## THIRD CAUSE OF ACTION

NEGLIGENCE

90.     The Town realleges and reaffirms each and every allegation set forth in all preceding paragraphs as if fully restated in this count.

91.     As manufacturers and sellers of PFAS-containing products and/or AFFF, Defendants owed a duty to The Town and to all persons whom its products might foreseeably harm to exercise due care in the formulation, manufacture, sale, labeling, warning, and use of PFAS-containing products and/or AFFF.

92.     Defendants knew or should have known that PFOA and/or PFOS were leaching from PFAS-containing products and/or AFFF used in as foreseen and intended.

93.     Despite the fact that Defendants knew that PFOA and PFOS are toxic, can contaminate water resources and are possible carcinogens, Defendants negligently:

a.  designed, manufactured, formulated, handled, labeled, instructed, controlled, marketed, promoted, and/or sold PFAS-containing products and/or AFFF;

b.  issued instructions on how PFAS-containing products and/or AFFF should be used and disposed of, thus improperly permitting PFOA and/or PFOS to contaminate the groundwater in and around the Town's wells;

c.  failed to recall and/or warn the users of PFAS-containing products and/or AFFF of the dangers of groundwater contamination as a result of standard use and disposal of this product; and,

d.  failed and refused to issue the appropriate warning and/or recalls to the users of PFAS-containing products and/or AFFF, notwithstanding the fact that Defendants know the identity of the purchasers of the PFAS-containing products and/or.

94.     As a direct and proximate result of Defendants' negligence, the Town has suffered, and continues to suffer, property damage requiring investigation, remediation, and monitoring costs to be determined at trial.

95.     Defendants knew that it was substantially certain that its acts and omissions described above would threaten public health and cause extensive contamination of subterranean drinking water supplies. Defendants committed each of the above described acts and omissions knowingly, willfully, and/or with fraud, oppression, or malice, and with conscious and/or reckless disregard for the health and safety of others, and for the Town's property rights.

27

## FOURTH CAUSE OF ACTION

TRESPASS

96.    The Town realleges and reaffirms each and every allegation set forth in all preceding paragraphs as if fully restated in this count.

97.    Plaintiff is the owner, operator and actual possessor of real property and improvements used for collecting drinking water.

98.    Defendants manufactured, distributed, marketed and promoted  PFAS-containing products and/or AFFF with the actual knowledge and/or substantial certainty that PFAS-containing products and/or AFFF would, through normal use, release PFOA and/or PFOS that would migrate into subterranean groundwater, causing contamination.

99.    Defendants negligently, recklessly, and/or intentionally produced and marketed PFAS-containing products and/or AFFF in a manner that caused PFOA and PFOS to contaminate the Town's property.

100.    As a direct and proximate result of Defendants' trespass, the Town has suffered and continues to suffer property damage requiring investigation, remediation and monitoring costs to be determined at trial.

101.    Defendants knew that it was substantially certain that its acts and omissions described above would threaten public health and cause extensive contamination of property, including groundwater collected for drinking.  Defendants committed each of the above described acts and omissions knowingly, willfully, and/or with fraud, oppression, or malice, and with conscious and/or reckless disregard for the health and safety of others, and for the Town's property rights.

28

**FIFTH CAUSE OF ACTION**

FRAUDULENT TRANSFER
(Against DuPont and Chemours)

102.    The Town realleges and reaffirms each and every allegation set forth in the all proceeding paragraphs as if fully restated in this cause of action.

103.    The Town seeks equitable and other relief pursuant to the Uniform Fraudulent Transfer Act against DuPont.

104.    Prior to and during 2015, Defendant Dupont was in the business of producing, making, fabricating, designing, marketing, and selling chemical feedstocks containing PFOA and/or chemicals that can degrade into PFOA and/or other PFAS as part of their "performance chemicals business."

105.    Upon information and belief, in February 2014, DuPont formed The Chemours Company as a wholly-owned subsidiary, and used it to spin off Dupont's "performance chemicals business" products line in July 2015.

106.    In addition to the transfer of the "performance chemicals business" products line, Chemours accepted broad assumption of liabilities for DuPont's historical use, manufacture, and discharge of PFOA and other PFAS.

107.    Upon information and belief, at the time of the transfer of its Performance Chemicals business to Chemours, DuPont had been sued, threatened with suit and/or had knowledge of the likelihood of litigation to be filed regarding DuPont's liability for damages and injuries from the manufacture, design, marketing and sale of PFOA or other PFAS components for the use in AFFF products.

108.    As a result of the transfer of assets and liabilities to Chemours described in this Amended Complaint, DuPont limited the availability of assets to cover judgements for all

29

liability for damages and injuries from the manufacture, design, marketing, sale of PFOA or other PFAS components for the use in AFFF products.

109.    DuPont has (a) acted with intent to hinder, delay and defraud creditors, or (b) without receiving a reasonably equivalent value in exchange for the transfer or obligation, and (i) was engaged or was about to engage in a business for which the remaining assets of Chemours were unreasonably insufficient in relation to the business; or (ii) intended to incur, or believed or reasonably should have believed that it would incur, debts beyond its ability to pay as they became due.

110.    Upon information and belief, DuPont engaged in acts in furtherance of a scheme to transfer its assets out of the reach of creditors, such as the Town, that have been damaged as a result of DuPont's actions as described in this Amended Complaint.

111.    Upon information and belief, DuPont and Chemours acted without receiving a reasonably equivalent value in exchange for the transfer of obligations, and DuPont believed, or reasonably should have believed, that it would incur debts beyond Chemours' ability to pay as they became due.

112.    The Town seeks to avoid the transfer of DuPont's liabilities for the claims brought in this Amended Complaint and to hold DuPont jointly and severably liable for any damages or other remedies that may be awarded by this Court or a jury under this Amended Complaint.

113.    Plaintiff realleges and reaffirms all allegations set forth in the preceding paragraphs.

114.    At all times relevant to this lawsuit, Defendants actually knew of the hazards that PFOA and PFOS posed to the environment, including Plaintiff's Property.

115.     Beginning in the 1960s and continuing through the date of the filing of this Complaint, Defendants agreed to engage in unlawful and wrongful acts that caused damage to Plaintiff.  Each Defendant performed at least one overt act in furtherance of this conspiracy.  Specifically, Defendants colluded for the avowed purpose of providing information about AFFF products containing PFOA and/or PFOS to the public and the government, with the true, unlawful purpose of:

a.     intentionally misrepresenting to the EPA and the public that AFFF containing PFOA and/or PFOS was safe and did not pose a risk to human health and the environment;

b.     concealing the dangers of AFFF containing PFOA and/or PFOS, including the products' characteristics and their propensity to contaminate soil and groundwater, from the government and public by, among other means, repeatedly misrepresenting how products containing PFOA and/or PFOS were being disposed of;

c.     concealing the dangers of PFOA and/or PFOS from consumers and the public; and

d.     using their considerable resources to fight legislation concerning PFOA and PFOS.

116.     As a direct and proximate result of Defendants' conspiracy, Defendants' AFFF products at all times relevant to this litigation have:

a.     posed and continue to pose a threat to Plaintiff's Property;

b.     contaminated and will continue to contaminate Plaintiff's Property;

c.     contaminated and will continue to contaminate the soil, surface and groundwater on and within the vicinity of Plaintiff's Property;

d.     required and will continue to require testing and monitoring of Plaintiff's Property for PFOA and PFOS contamination;

e.     required or will require remediation of PFOA and PFOS contamination or, where remediation is impracticable or insufficient for Plaintiff, removal and disposal of the contamination;

31

f.    diminished Plaintiff's confidence in, and the use and enjoyment of, Plaintiff's Property;

g.    diminished Plaintiff's Property value due to actual, impending, and/or threatened PFOA and PFOS contamination; and

h.    caused and/or will cause Plaintiff to sustain substantially increased damages and expenses resulting from the loss of the safety, use, benefit and/or enjoyment of its property.

## SIXTH CAUSE OF ACTION

### PUBLIC NUISANCE

117.   The Town realleges and reaffirms each and every allegation set forth in the all proceeding paragraphs as if fully restated in this cause of action.

118.   Defendants manufactured, distributed, marketed and promoted PFAS and PFAS-containing products in a manner that created or participated in creating a public nuisance that unreasonably endangers or injures the property, health, safety, and comfort of the general public and Plaintiff, causing inconvenience and annoyance.

119.   Defendants' intentional, negligent and reckless acts and omissions have created widespread contamination of property with PFAS.

120.   By their conducts, defendants violated and continue to violate public rights and rights of the community at large to clean and unpolluted drinking water.

121.   The presence of PFAS interferes with Plaintiff's use and/or enjoyment of its property in a way that an ordinary, reasonable person would find is a substantial inconvenience and annoyance.

122.   Defendants knew or, in the exercise of reasonable care, should have known that the manufacture and sale of PFAS would seriously and unreasonably interfere with the ordinary comfort, use, and enjoyment of the Town's drinking water.

123.    As a direct and proximate result of Defendants' creation of a public nuisance, Plaintiff has suffered, and continues to suffer, property damage requiring investigation, remediation and monitoring costs to be determined at trial.

## SEVENTH CAUSE OF ACTION

### PRIVATE NUISANCE

124.    The Town realleges and reaffirms each and every allegation set forth in the all proceeding paragraphs as if fully restated in this cause of action.

125.    Plaintiff's drinking water has been contaminated with PFAS.

126.    The presence of PFAS unreasonably interferes with Plaintiff's use, benefit, and enjoyment if its property.

127.    Defendants knew, or in the exercise of reasonable care, should have known that the manufacture and sale of PFAS and PFAS-containing products would seriously and unreasonably interfere with the ordinary comfort, use, and enjoyment of the Town's drinking water.

128.    Defendant's intentional, negligent, and reckless acts and omissions have contaminated the Town's drinking water.

129.    As a direct and proximate result of Defendants' creation of a private nuisance, Plaintiff has suffered, and continues to suffer, property damage requiring investigation, remediation, and monitoring costs to be determines at trial.

## PRAYER FOR RELIEF

The Town  prays for judgment against Defendants, jointly and severally, as follows:

1.    Compensatory damages according to proof including, but not limited to:

a. costs and expenses related to the past, present, and future investigation, sampling, testing, and assessment of the extent of PFAS contamination on and within Plaintiff's Property;

b. costs and expenses related to the past, present, and future treatment and remediation of PFAS contamination of Plaintiff's Property or, in the alternative, the costs and expenses associated with and related to the removal and disposal of the contamination; and

c. costs and expenses related to the past, present, and future installation and maintenance of monitoring mechanisms to assess and evaluate PFAS on and within Plaintiff's Property.

2. Punitive damages;

3. Consequential damages;

4. Costs, disbursements and attorney's fees of this lawsuit;

5. Pre-judgment and post-judgment interest; and

6. Any other and further relief as the Court deems just, proper, and equitable.

## **DEMAND FOR JURY TRIAL**

Pursuant to Federal Rule of Civil Procedure 38, the Town demands a jury trial.

Dated:   March 24, 2021

/s/  Carla Burke Pickrel
**BARON & BUDD, P.C.**
Scott Summy
Carla Burke Pickrel
M. Cristina Sanchez
3102 Oak Lawn Avenue, Suite 1100
Dallas, TX   75219-4281
Telephone:  (214) 521-3605

Richard M. Sandman (BBO # 440940)
**RODMAN, RODMAN & SANDMAN, P.C**.
442 Main Street, Suite 300
Malden, MA   02148-5122
Telephone:  (781) 322-3720

Philip F. Cossich, Jr.
Brandon Taylor

34

**COSSICH, SUMICH, PARSIOLA
& TAYLOR, LLC**
8397 Highway 23, Suite 100
Belle Chasse, LA 70037
(504) 394-9000

*Attorneys for Plaintiff*